IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KAREN FITZGERALD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11 CV 0388 |
| | ) | |
| OFFICER M. SANTORO, OFFICER B. CRAM, | ) | Judge Elaine E. Bucklo |
| PARAMEDIC D. ASHCRAFT #3045, and | ) | |
| UNKNOWN OFFICERS and PARAMEDICS, | ) | |
| of the VILLAGE OF SCHAUMBURG, | ) | |
| a municipal corporation and body politic, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

**ARGUMENT**

**I. DEFENDANTS' ENTRY INTO PLAINTIFF'S RESIDENCE WAS LAWFUL AND DID NOT VIOLATE THE CONSTITUTION BECAUSE THEY HAD A REASONABLE BELIEF THAT PLAINTIFF WAS A DANGER TO HERSELF**

Although a warrantless search or seizure in someone's home is "per se unreasonable," an exception to the warrant requirement exists when there are exigent circumstances. *See U.S. v. Richardson*, 208 F.3d 626, 629 (7th Cir. 2000) (*citing U.S. v. Bennett*, 908 F.2d 189, 192 (7th Cir.1990)). The Seventh Circuit has explained that: "[T]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe a person within is in need of immediate aid" or where they "reasonably feared for the safety of someone inside the premises." *Id.* (*quoting Mincey v. Arizona*, 437 U.S. 385, 392, 98 S. Ct. 2408 (1978), and *citing U.S. v. Brown*, 64 F.3d 1083, 1086 (7th Cir.1995)).

The test as to whether exigent circumstances exist to make a warrantless entry into a

home is objective. *Id.* Like the test to determine whether probable cause exists for a warrantless arrest, a court must consider the circumstances as they appeared to the officers at the time they entered the premises. If a reasonable officer, armed with the knowledge the officer in question had at the time of entry, would have believed that someone inside the residence required immediate assistance, exigent circumstances will justify the warrantless entry. *Id.* (*citing U.S. v Arch*, 7 F.3d 1300, 1304 (7th Cir. 1993). A report of a possible suicidal subject, like a report of a crime in progress, heightens the concern for the safety of the individuals in the residence and thus, police judgment "should be afforded an extra degree of deference." *U.S. v. Jenkins*, 329 F.3d 579, 581(7th Cir. 2003) (*citing Reardon v. Wroan*, 811 F.2d 1025, 1029 (7th Cir. 1987)). Moreover, in responding to emergency calls, police must be able to act quickly and without necessary second-guessing. As explained by the Seventh Circuit in *Richardson*,"the business of policemen and firemen is to act, not to speculate or meditate on whether the [911] report is correct. People could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process." 208 F.3d at 630 (*quoting Wayne v. U.S.*, 318 F.2d 205, 212 (D.C. Cir.1963) (Burger, J.)).

In the present case, the existence of exigent circumstances is undisputed. Defendants were told by dispatch that Plaintiff phoned another police station, made suicidal statements to the desk officer, and had stated that she was "very depressed" (Defs.' Stmt. of Facts ("SOF"), ¶¶ 6-7, 14). They were further told that Plaintiff sounded intoxicated on alcohol or drugs and had reported a recent miscarriage (*id.*, ¶¶ 7-8). Just before they entered the residence, the officers were informed that Plaintiff hung up the phone and ended her conversation abruptly with the Palentine desk officer (*id.*, ¶ 15). In light of these facts and circumstances, it was reasonable for

2

Defendants to believe that Plaintiff's safety was in danger when they arrived at the Plaintiff's home. *See Holzman v. City of South Bend*, No. 05 CV 316, 2006 WL 2788587, *3 (N.D. Ind. Sept. 25, 2006) (finding that the officers' belief that the plaintiff was in danger was reasonable since they were told by dispatch that the plaintiff made a threat of suicide). Defendants' sense of urgency to ensure no harm came to Plaintiff was heightened by Plaintiff's abrupt hang up of the phone call with the Palatine officer just before Defendants entered Plaintiff's home. *See Hanson v. Dane County*, 599 F. Supp. 2d 1046, 1053-54 (W.D. Wis. 2009) (finding that exigent circumstances existed when a 911 caller hung up without giving further information).

Thus, regardless of whether Plaintiff's threat of suicide was real, Defendants had an objectively reasonable belief that Plaintiff was in danger which justified their entrance into Plaintiff's residence without a warrant. *See id.*; *Holzman*, 2006 WL 2788587, at *3. Therefore, Defendants are entitled to summary judgment on Plaintiff's claim that their entry into her home was unconstitutional.

**II.    DEFENDANTS HAD PROBABLE CAUSE TO SEIZE PLAINTIFF AND TRANSPORT HER TO THE HOSPITAL BASED ON THE REPORT FROM DISPATCH AND PLAINTIFF'S BEHAVIOR WHEN THEY ARRIVED AT HER HOME**

A claim for a civil seizure for involuntary mental health commitment is governed by the Fourth Amendment. *See Threlkeld v. White Castle Systems, Inc.*, 201 F. Supp. 2d 834, 842 (N.D. Ill. 2002). The Seventh Circuit has ruled that the same probable cause standards that apply to criminal seizures (arrests) are applicable to civil commitment seizures. *Villanova v. Abrams*, 972 F.2d 792, 795 (7th Cir. 1992) (*citing Chathas v. Smith*, 884 F.2d 980, 987 (7th Cird. 1989); *Gooden v. Howard County*, 954 F.2d 960, 968 (4th Cir. 1992) (en banc); and *Baltz v. Shelley*,

3

661 F. Supp. 169, 178 n. 36 (N.D. Ill. 1987)).  Thus, as summarized by this Court in *Threlkeld*, "probable cause to hospitalize a person against that person's will exists where the facts and circumstances within the police officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant an individual of reasonable causation in the belief that an immediate danger exists of the person hurting herself or others." 201 F. Supp. 2d at 842 (*quoting Baltz*, 661 F. Supp. at 179).

As with a probable cause determination made at the time of a criminal arrest, the probable cause inquiry for mental health seizures does not require a showing that the officer's belief is more likely true than false.  *Id.* at 843 (*quoting Qian v. Kautz*, 168 F.2d 949, 953 (7th Cir. 1999)).  It also does not require the officer to personally observe the erratic behavior of the person who needs hospitalization; the officer can rely on statements made by other witnesses provided it is reasonable to believe the statements are true.  *See McKinney v. George*, 726 F.2d 1183, 1187 (7th Cir. 1984).  Although probable cause is usually a question for the jury, if facts sufficient to create probable cause are undisputed, probable cause is a question of law, which can be decided on a motion for summary judgment.  *See Threlkeld*, 201 F. Supp. 2d at 842; *Potts v. City of Lafayette*, 121 F.3d 1106, 1112 (7th Cir. 1997).

Against that backdrop, it is undisputed that Defendants had probable cause to take Plaintiff into custody and transport her to the local hospital.  When Defendants arrived at Plaintiff's residence, she was intoxicated and stated that she was depressed (SOF, ¶¶ 19-27).  Although Plaintiff denied making suicidal statements when questioned about her conversation with the Palatine desk officer, this denial was belied by her statement that she wanted to speak to a social worker or psychiatrist (*id.*, ¶ 26).  In light of her seemingly conflicting statements,

4

Officer Santoro called dispatch and confirmed that Plaintiff had made suicidal statements to the Palatine officer (*id.*, ¶¶ 28-29). Officer Santoro had no reason to disbelieve this information and was thus entitled to rely on it. *See McKinney*, 726 F.2d at 1187. Taking the entire circumstances known to Defendants at the time into account, it is undisputed that they had probable cause to take Plaintiff into custody and transport her to the hospital in order to ensure her safety and have her evaluated by medical professionals. Accordingly, Defendants should be granted summary judgment on Plaintiff's claim that she was unlawfully seized.

### III. DEFENDANTS DID NOT USE UNREASONABLE FORCE IN SEIZING PLAINTIFF, AND THUS SUMMARY JUDGMENT SHOULD BE ENTERED IN THEIR FAVOR

A claim that police officers used excessive force during a seizure is evaluated under the Fourth Amendment's objective reasonableness standard. *See Graham v. Conner*, 490 U.S. 386, 395, 109 S. Ct. 1865 (1989). A use of force is unconstitutional where an officer, judging from the totality of the circumstances at the time of the seizure, used greater force than was reasonably necessary to effectuate the seizure. *See Stainback v. Dixon*, No. 07-3091, 2008 WL 3876092, *2 (C.D. Ill. Aug. 18, 2008) (*citing Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir. 1987)). If an officer's actions are objectively reasonable in light of the facts and circumstances confronting him, however, the use of force will not be excessive. *See Graham*, 490 U.S. at 397. This analysis does not take into consideration the officers' underlying intent or motivation because an officer's "evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force." *Id.*

In her deposition, Plaintiff identified that force was used against her: (1) during the struggle when the Defendants were trying to move her to the gurney and secure her on it (SOF,

5

¶¶ 34-44); and, (2) in the ambulance when Officer Cram attempted to restrain Plaintiff after she had removed the straps on the gurney and attempted to leave (*id.*, ¶ 52-59).  Both incidents were *de minimis* and reasonable given the circumstances and Plaintiff's resistance. *Graham*, 490 U.S. at 396 (not every push or shove is a violation of the Fourth Amendment).

>   A. **The force used to escort Plaintiff to the gurney and restrain her on it was reasonable and Officers Santoro and Cram should be granted summary judgment on Plaintiff's excessive force claim for events in her home.**

While attempting to move Plaintiff to the gurney, Officers Santoro and Cram each took an arm and escorted Plaintiff to the gurney (*id.*, ¶ 35).  Plaintiff admittedly tried to escape their grasp by pulling her arms away from the officers and screaming at the top of her lungs (*id.*, ¶¶ 34, 36).  In order to control Plaintiff's movements, Officer Santoro used a wrist lock and Officer Cram used an arm bar escort position (*id.*, ¶¶ 37-40).  Officer Santoro handcuffed her right wrist and secured the other cuff to gurney (*id.*, ¶ 41).  Once she was on the gurney, Plaintiff continued kicking and flailing while Paramedics Ashcraft and Blair secured her with the safety straps (*id.*, ¶ 44).  The straps were necessary in order to secure Plaintiff for transport to the hospital (*id.*, ¶ 45).  When she complained that the handcuff was too tight, Officer Santoro immediately loosened the cuff and doubled locked it to ensure it would not tighten again (*id.*, ¶ 43).

Based on the undisputed facts, the force used to remove Plaintiff from her home was reasonable and did not violate her Fourth Amendment rights.  *See Graham*, 490 U.S. at 396 (the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it).  The fact that Defendants used a wrist lock and an arm bar to control Plaintiff while escorting her to the gurney does not change this outcome.  Such *de minimis* uses of force were reasonable to control Plaintiff and secure her.  *See Beshears v.*

6

*Winters*, No. 09-2017, 2011 WL 165188, *7 (C.D. Ill. Jan. 18, 2011) (finding the correctional officers' use of an arm bar control technique and a take-down maneuver was *de minimis*); *Jones v. Charter Township of Genesee*, No. 09 CV 11211, 2010 WL 3905374, *5 (E.D. Mich. July 28, 2010) (finding an officers' use of a wrist lock to assist in restraining the plaintiff and placing him on the ambulance gurney reasonable where the plaintiff was resisting efforts to place him on the gurney), *adopting in part, rejecting in part report and recommendation*, No. 09 CV 11211, 2010 WL 3906366 (E.D. Mich. Sept. 27, 2010). Nor does mere discomfort from overly tight handcuffs constitute unreasonable force, especially here where Santoro immediately loosened the cuffs after Plaintiff complained, and there is no evidence that Plaintiff complained again. *See Tibbs v. City of Chicago,* 469 F.3d 661, 666 (7th Cir. 2006).

> **B.     Officer Cram should be granted summary judgment on Plaintiff's excessive force claim for his use of force in the ambulance because it was *de minimis* and Plaintiff's injury was not caused by his use of force.**

Once in the ambulance, Plaintiff admittedly tried to get away (*id.*, ¶ 57). She pulled on her hand to free it from the handcuff, and she also undid the safety straps securing her to the gurney (SOF, ¶¶ 52-53). Officer Cram merely reached over Plaintiff's right shoulder and grabbed her right wrist in a wrist lock (*id.*, ¶¶ 54-55). When Officer Cram reached back to his belt to grab the handcuff key with his left hand, Plaintiff admittedly placed her left hand on her right forearm and jerked her right arm violently out of Officer Cram's grasp (*id.*, ¶¶ 58-59). There was then a popping or snapping sound heard from Plaintiff's wrist (*id.* ¶ 60). Thus, the sound did not occur when Cram employed the wrist lock but, rather, it was heard only when Plaintiff jerked her arm away from Cram's grasp.

Officer Cram's mere use of a wrist lock was objectively reasonable. *See Jones*, 2010 WL

7

3905374, at *5. Given Plaintiff's admitted resistance and attempts to get away, any reasonable officer would have believed it was necessary to restrain her in order to combat her resistance and also to re-secure her so that she could be safely transported to the hospital (SOF, ¶ 45). Therefore, Officer Cram is entitled to summary judgment on Plaintiff's excessive force claims.

> C. **Defendants Santoro and Ashcraft did not participate in restraining Plaintiff in the ambulance, and therefore, did not use force against her in the ambulance.**

Section 1983 creates a cause of action based on personal liability and predicated upon fault; therefore, an individual cannot be held liable unless he caused or participated in the alleged violation. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995); *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994). In the instant case, Officer Santoro was not even present while Plaintiff was restrained in the ambulance (SOF, ¶ 64). Likewise, the record is devoid then of any evidence showing that Paramedic Ashcraft participated in the force used to restrain Plaintiff on the ambulance (*id.*, ¶ 56). Therefore, Santoro and Ashcraft cannot be held liable on Plaintiff's excessive force claim for events arising in the ambulance.

IV. **DEFENDANTS ARE, ALTERNATIVELY, ENTITLED TO QUALIFIED IMMUNITY BECAUSE THEIR ACTIONS WERE REASONABLE UNDER THE ESTABLISHED CONSTITUTIONAL STANDARDS**

Qualified immunity shields liability from officials who perform discretionary functions in the course of duty to the extent that their conduct does not violate clearly established rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982); *Spiegel*, 196 F.3d 717, 723 (7th Cir. 1999). It is intended to "provide government officials with the ability to 'reasonably anticipate when their conduct may give rise to liability for damages.'" *Anderson v. Creighton*, 483 U.S. 635, 646, 107 S. Ct. 3034 (1987)

(*quoting Davis v. Scherer*, 468 U.S. 183, 195, 104 S. Ct. 3012 (1984)). Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S. Ct. 534 (1991) (*quoting Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092 (1986)).

Until recently, a plaintiff attempting to defeat a defense of qualified immunity had to show (1) that his rights were violated, and (2) that the law concerning his asserted right was clearly established at the time of the violation. *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151 (2001). In January 2009, the United States Supreme Court reconsidered this two-step analysis in *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009). While acknowledging its benefits, the Supreme Court ruled that "the *Saucier* protocol should not be regarded as mandatory in all cases" and that the judges of the district courts "should have discretion to decide whether that procedure is worthwhile in particular cases." *Id.* at 236. The Supreme Court then turned to the case at hand and, without discussing whether the plaintiff's rights were violated, ruled that the police officers were entitled to immunity because their conduct did not violate clearly established law. *Id.* at 243-44. Based on *Pearson*, therefore, as the Seventh Circuit recently explained, "courts are still free to follow the *Saucier* protocol where...it facilitates the expeditious disposition of a case," but the two-step analysis is not mandatory. *See Akande v. Grounds*, 555 F.3d 586, 590 fn.3 (7th Cir. 2009).

The District Court's decision in *Holzman v. City of South Bend*, No. 05 CV 316, 2006 WL 2788587, *3 (N.D. Ind. Sept. 25, 2006), is instructive. There, the plaintiff attempted to contact Oregon's assisted suicide hotline, but inadvertently reached a private ambulance service. 2006 WL 2788587, at *1. The ambulance service contacted the local police department and

9

stated that the plaintiff had threatened suicide by cop. *Id.* Police officers were dispatched to the plaintiff's home. The plaintiff told the officers that he was not suicidal, that he did not possess any weapons, that his terminal illness had prompted his phone call, and that he wasn't going to hurt himself because it was against his religion. *Id.* Despite these assurances, the officers wrestled him to the ground and restrained him. *Id.* The Court ruled that, given the plaintiff's direct statements about his intentions and state of mind when the officers arrived, the officers' actions violated the plaintiff's Fourth Amendment rights. *Id.* at 3. However, the Court ruled that a reasonable officer could have believed that a warrantless entry and search of the home was lawful in light of the clearly established law and the information the officer had at the time. *Id.* The Court explained:

> "The officers were placed in the difficult position of being told by their dispatcher that [the plaintiff] was 'contemplating suicide,' versus believing his statements that he had no intention of hurting himself. The doctrine of qualified immunity allows officers the ability to make such difficult decisions as part of effectively performing their duties."

*Id.* (*citing Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987)).

Likewise, in the instant case, Defendants are entitled to qualified immunity even if their actions violated Plaintiff's Fourth Amendment rights. As in *Holzman*, a reasonable officer could have believed that a warrantless entry based on exigent circumstances was constitutional in light of the established law at the time. Defendants, like the officers in *Holzman*, were put in the difficult position of being told by dispatch that the Plaintiff made suicidal statements while Plaintiff denied making those statements. Under the doctrine of qualified immunity, Defendants are allowed to make the decision to restrain Plaintiff and transport her to the hospital without fear of future liability.

Furthermore, given the circumstances confronted by Defendants in this case, it was reasonable for the Defendants to believe that the force used to take Plaintiff into custody and secure her on the gurney was acceptable in light of the established case law at the time. Likewise, it was reasonable for Defendant Cram to believe that placing his hand on Plaintiff's wrist to restrain her on the gurney was acceptable under the circumstances. *See Martin v. Luckett*, No. 07 C 2800, 2011 WL 1231024, *8 (N.D. Ill. Mar. 30, 2011) (finding that defendant officer was entitled to qualified immunity on arrestee's excessive force claim because the officer's actions were not "so plainly excessive" that he would be on notice that he was violating the plaintiff's rights). Accordingly, Defendants are entitled to qualified immunity and judgment should be granted in their favor.

## V. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S STATE LAW CLAIMS

### A. Defendant Officers Santoro and Cram are entitled to immunity for Plaintiff's state law claims under the Illinois Tort Immunity Act.

Section 2-201 of the Illinois Tort Immunity Act protects public officials from liability for the exercise of discretion. 745 ILCS 10/2-201. "Decisions to transport someone for medical evaluation and the proper method to transport patients to a hospital for evaluation are discretionary." *Reddick v. Bloomingdale Police Officers*, No. 96 C 1109, 1997 WL 441328, *7 (N.D. Ill. July 30, 1997) (*citing Anderson v. Village of Forest park*, 238 Ill. App. 3d 83, 94 (1st Dist. 1992)). This immunity is absolute and includes claims of willful and wanton conduct. *Id.* (*citing In re Chicago Flood Litigation*, 188 Ill. 2d 564 (2000)). As in *Reddick*, Officers Santoro and Cram made a discretionary decision to transport Plaintiff to the hospital. The decision to handcuff and strap Plaintiff to the gurney in order to safely transport her to the hospital were also

discretionary. Thus, they are immune from any state law claims of battery and intentional infliction of emotional distress under Section 2-201.

Alternatively, Officers Santoro and Cram are entitled to immunity pursuant to Article VI of the Act, which extends immunity for the determination of whether to confine a person for mental illness (745 ILCS 10/6-107) and for any injury caused by or to an escaping mental patient (745 ILCS 10/6-108). Again, neither of these provisions contain an exception for willful and wanton conduct. By her own admission, Plaintiff was attempting to escape custody of Defendants while being confined to the gurney and transported to the hospital (SOF, ¶¶ 32, 34, 36, 44, 52-53, 57, 59), and therefore Section 6-108 of the Act is applicable.

> B. **Defendant Paramedic Ashcraft is immune from liability pursuant to the Emergency Medical Services (EMS) Systems Act.**

The EMS Systems Act, Section 3.150, immunizes any person who is certified, licensed, or otherwise authorized under the Act, and who in good faith provides emergency or non-emergency medical services in the course of their duties, unless their actions constitute willful and wanton misconduct. *See* 210 ILCS 50/3.150. Paramedics, such as Defendant Ashcraft, are licensed pursuant to the EMS Systems Act (210 ILCS 50/3.50) and are thus covered by the Act's immunity provisions. "An act is willful or wanton if it is intentional or if it is committed under circumstances exhibiting a reckless disregard for the safety of others." *Ramirez v. City of Chicago*, 82 F. Supp. 2d 836, 842 (N.D. Ill. 1999) (*citing Meck v. Paramedic Services of Illinois*, 296 Ill. App. 3d 720, 725 (1st Dist. 1998)). As discussed above, Paramedic Ashcraft did not act willfully and wantonly in making the decision to transport Plaintiff to the hospital against her will and in physically restraining her during that transport. Thus, Paramedic Ashcraft

is entitled to the immunity provided by Section 3.150 of the EMS Systems Act on Plaintiff's state law claims.

    **C.    Alternatively, the undisputed facts demonstrate that Defendants did not commit a battery.**

Under Illinois law, a person commits the tort of battery when (1) he intends to cause harmful or offensive contact or an imminent apprehension of such a contact, and (2) harmful contact directly or indirectly results. *See Cusack v. City of Des Plaines*, No. 06 C 2507, 2007 WL 2484325, *4 (N.D. Ill. Aug. 29, 2007) (*citing Cohen v. Smith*, 269 Ill. App. 3d 1087, 1090, (5th Dist. 1995)). As discussed above, the facts of Plaintiff's seizure, as testified to by her, consist of the officers supporting her by her arms while she was escorted to the gurney, her right arm being placed in a handcuff and secured to the gurney, and her right wrist being held when she undid the straps securing her to the gurney on the ambulance in an attempt to escape the ambulance (*id.*, ¶¶ 35, 41, 55, 57). Nothing in the record, however, supports a finding that Defendants intended to cause harm. *See Walls v. Lombard Police Officers*, No. 99 C 3016, 2002 WL 548675, *6 (N.D. Ill. April 4, 2002) (where the party allegedly inflicting injury is not doing an unlawful act, the intent to harm is material for finding of battery).

    **D.    Finally, the undisputed facts show that Defendants are entitled to summary judgment on Plaintiff's claim of intentional infliction of emotional distress.**

The standards that Plaintiff must meet to prevail on an intentional infliction of emotional distress claim under Illinois law are "quite high." *See Falcone v. Vill. of Hanover Park*, No. 02 C 8747, 2004 WL 2900856, *11 (N.D. Ill. Dec. 10, 2004). Plaintiff must establish that (1) Defendants' conduct was truly extreme and outrageous, (2) Defendants either intended that their conduct should inflict severe emotional distress or knew that there was a high probability that

13

their conduct would cause severe emotional distress, and (3) their conduct in fact caused severe emotional distress. *See Cornell v. Gubbles*, No. 05-1389, 2009 WL 56874, *5 (C.D. Ill. Jan. 6, 2009) (*citing Thomas v. Fuerst*, 345 Ill. App. 3d 929 (1st Dist. 2004)). "The nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Falcone*, 2004 WL 2900856 at *11 (*quoting Dunn v. City of Elgin, Illinois*, 347 F.3d 641, 651 (7th Cir. 2003)). Even conduct characterized by malice or a degree of aggravation that would entitle plaintiff to punitive damages for another tort does not meet this demanding standard. *See id.* (*citing Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997)).

In light of the high bar set by precedent for a successful intentional infliction of emotional distress claim, even if Plaintiff could overcome the immunities granted by the Tort Immunity Act and the EMS Systems Act, Plaintiff cannot establish that the alleged misconduct as contained in the record was truly extreme and outrageous. As outlined above, Defendants' decision to transport her to the hosiptal was based on her prior suicidal statements and levels of intoxication and their use of force was *de minimis* and necessary to secure Plaintiff. Such conduct is not extreme and outrageous.

The record is further silent as to the intent of the Defendants' to inflict severe emotional distress or knowledge that there was a high probability their actions would result in such harm. There is no evidence to even suggest that a reasonable trier of fact could conclude from the record that Defendants, who were performing their duties and attempting to keep Plaintiff safe from herself, *intended* to cause Plaintiff emotional distress or disregarded a high probability of the same. Accordingly, Defendants are entitled to summary judgment on Plaintiff's intentional

infliction of emotional distress claim.

## VI. BECAUSE JUDGMENT SHOULD BE ENTERED FOR THE INDIVIDUAL DEFENDANTS, THE VILLAGE CANNOT BE HELD LIABLE ON THE STATE LAW CLAIMS

Section 2-109 of the Tort Immunity Act states that a local public entity is not liable for an injury resulting from an act or omission of its employees when its employee are not liable. 745 ILCS 10/2-109. Thus, because the individual Defendants are not liable for Plaintiff's state law claims as discussed above, the Village cannot be held liable either. Thus, the Village is also entitled to judgment in its favor.

## CONCLUSION

For the forgoing reasons, Defendants, OFFICER M. SANTORO, OFFICER B. CRAM, PARAMEDIC D. ASHCRAFT, and the VILLAGE OF SCHAUMBURG, move that this Honorable Court enter an order granting summary judgment in favor of Defendants.

Respectfully submitted,

s/**Michael D. Bersani**
MICHAEL D. BERSANI, Atty Bar No. 06200897
CHARLES E. HERVAS, Atty Bar No. 06185117
*Attorneys for Defendants*
HERVAS, CONDON & BERSANI, P.C.
333 W. Pierce Road, Suite 195
Itasca, IL 60143-3156
P: 630-773-4774    F: 630-773-4851
mbersani@hcbattorneys.com
chervas@hcbattorneys.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KAREN FITZGERALD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11 CV 0388 |
| ) | |
| OFFICER M. SANTORO, OFFICER B. CRAM, ) | Judge Elaine E. Bucklo |
| PARAMEDIC D. ASHCRAFT #3045, and ) | |
| UNKNOWN OFFICERS and PARAMEDICS, ) | |
| of the VILLAGE OF SCHAUMBURG, ) | |
| a municipal corporation and body politic, ) | |
| ) | |
| Defendants. ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2011, I electronically filed the foregoing **Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

**TO:**  Mark F. Smolens                                     Richard R. Mottweiler
Michael C. Cannon                                 Nicole L. Barkowski
Law Office of Mark F. Smolens                Law Offices of Richard Mottweiler
1627 West Colonial Parkway, Suite 301   1627 Colonial Parkway
Inverness, IL 60067                                 Inverness, IL 60067
*One of the Attorneys for Plaintiff*              *One of the Attorneys for Plaintiff*

s/**Michael D. Bersani**
MICHAEL D. BERSANI, Atty Bar No. 06200897
CHARLES E. HERVAS, Atty Bar No. 06185117
*Attorneys for Defendants*
HERVAS, CONDON & BERSANI, P.C.
333 W. Pierce Road, Suite 195
Itasca, IL 60143-3156
P: 630-773-4774     F: 630-773-4851
mbersani@hcbattorneys.com
chervas@hcbattorneys.com

16